NELSON GONZALEZ ALVARADO
Apelante

v.

ESSO STANDARD OIL CO. OF P.R.
Apelado

Núm. KLAN-97-00479

San Juan, Puerto Rico, a 23 de marzo de 1999

Panel integrado por su Presidente, Juez Sánchez Martínez,
la Jueza Cotto Vives y el Juez Urgell Cuebas

Urgell Cuebas, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El Sr. Nelson González Alvarado recurre ante nos de una sentencia emitida el 20 de febrero de 1997 por el Tribunal de Primera Instancia, Sala Superior de Bayamón. La misma condena a la demandada, Esso Standard Oil of Puerto Rico (en adelante, Esso), a pagar la suma de $15,263 al Sr. González Alvarado por concepto de daños y perjuicios. Alega el Sr. González Alvarado que dicha suma no cubre la totalidad de los daños causados por un alegado incumplimiento de contrato por parte de Esso.

Considerados los alegatos de ambas partes y los documentos en el expediente ante nos, encontramos que la suma concedida por el Tribunal de Primera Instancia corresponde acertadamente a la realidad fáctica del caso, por lo que confirmamos la sentencia recurrida.

**I**

El Sr. González Alvarado adquirió del Sr. Juan Concepción y su esposa, Sra. Elba Díaz, mediante contrato de compraventa suscrito el 28 de febrero de 1992, por la suma de $180,000, la plusvalía o *"llave"* de una gasolinera localizada en la carretera Núm. 2, Barrio Candelaria, en el Municipio de Toa Baja. Antes de formalizarse el referido contrato, el Sr. González Alvarado fue cualificado como detallista por Esso, quien era el propietario del inmueble. Además, tuvo la opurtunidad de examinar un documento titulado *"Retail Outlet Appraisal",* en el que se desglosaban los gastos e ingresos que, en forma promedio, la estación de gasolina generaba mensualmente. Mas allá de cualificar al Sr. González Alvarado como detallista, Esso no intervino en el contrato de compraventa, ni en las negociaciones que precedieron al mismo.

Ese mismo día, Esso y el Sr. González Alvarado suscribieron un Contrato de Arrendamiento sobre el inmueble donde ubica la gasolinera, además de un contrato de Suministro de Combustible. Posteriormente, el 15 de marzo de 1995 estos contratos fueron renovados por las partes.

El 19 de abril de 1995 la Junta de Calidad Ambiental (en adelante, J.C.A.) notificó al Sr. González Alvarado, entre otros detallistas de Esso, de una Orden Administrativa en la que se le ordenaba desitir de disponer, en tanques subterráneos, los fluidos producto de la operación del *"pino"* en la estación, el cual es utilizado en el proceso de lubricación de los automóviles (cambio de filtro y aceite) y para lavar automóviles. La Orden Administrativa estaba fundamentada en el alegado incumplimiento del Sr. González Alvarado con varias disposiciones del Reglamento para el Control de la Inyección Subterránea (RCIS) de la J.C.A. El 9 de octubre de 1995, la J.C.A. dictó una Orden Administrativa Enmendada, en la que incluyó a Esso como parte querellada.

Luego de varias reuniones entre Esso, la J.C.A. y los detallistas involucrados, las partes firmaron el 8 de abril de 1996 una estipulación, comprometiéndose Esso a pagar $15,000 por concepto de las multas impuestas a sus estaciones de gasolina. Además, la J.C.A. reconoció la inversión de unos $910,919.99 que Esso realizó en gestiones conducentes a que las estaciones querelladas cumplieran con el RCIS. Es en el plazo entre la primera y la segunda orden administrativa de la J.C.A. que, como veremos más adelante, el Sr. González Alvarado instó la demanda que da origen al presente recurso. Mientras esta situación se desarrollaba, comenzaron a surgir diferencias entre el Sr. González Alvarado y Esso en cuanto a la operación del primero de la estación en el Barrio Candelaria.

El 16 de enero de 1996, el Sr. Raúl A. Rivera, Representante de Ventas y Mercadeo de Esso, dirigió una comunicación al Sr. González Alvarado en la que le llamó la atención por la pobre apariencia y el evidente descuido en el mantenimiento que mostraba la estación. En la comunicación, el Sr. Rivera enfatizó que esta situación, además de afectar la imagen corporativa de Esso, constituia una violación al contrato de arrendamiento vigente entre Esso y el Sr. González Alvarado.

El 24 de enero de 1996 el Sr. Rivera visitó la estación y, luego de notar que el Sr. González Alvarado no había tomado acción alguna en cuanto al mantenimiento y aspecto de la estación, dirigió a éste una segunda comunicación, fechada 14 de febrero de 1996, en la que repitió los señalamientos hechos en la carta anterior y concedió un plazo de quince (15) días al Sr. González Alvarado para que cumpliese con sus obligaciones contractuales.

La situación empeoró cuando el 2 de febrero de 1996 el Sr. González Alvarado envió un cheque por $886 a Esso, correspondiente a la renta del mes de enero. El cheque resultó no tener fondos suficientes, lo que obligó a Esso a exigir del Sr. González Alvarado que pagase sus cuentas de ese momento en adelante, y de acuerdo a la política de Esso, con cheques certificados. El día 20 de ese mismo mes, el Sr. González Alvarado emitió otro cheque, sin certificar, por la suma de $11,062, como pago por un envío de combustible. Esso cedió a las

peticiones del Sr. González Alvarado, y depositó este último cheque, sólo para descubrir, días más tarde, que el Sr. González Alvarado había dado una orden de detener el pago *("stop payment")* del mismo. Finalmente, el Sr. González Alvarado cerró la estación el 23 de febrero de 1996, terminando con la venta de gasolina en el lugar.

Ante la evidente falta de interés del Sr. González Alvarado en administrar adecuadamente la estación, el Sr. Jorge Guzmán, Gerente de Ventas de Esso, le dirigió una comunicación el 11 de marzo de 1996 en la que, luego de hacer un recuento de los incidentes relatados, dio por terminado tanto el Contrato de Arrendamiento como el Contrato de Suministro entre Esso y el Sr. González Alvarado. Indicó que la falta de pago y el mantener la gasolinera cerrada por más de siete (7) días constituian razones suficientes para dar por terminados los acuerdos, según establecido en las cláusulas y 11 del Contrato de Arrendamiento y la cláusula 5 del Contrato de Suministro. En adición, le informó al Sr. González Alvarado que tenía hasta el 29 de marzo de 1996 para vender la llave a un comprador, previamente aprobado por Esso, o de no poder realizar la venta para esa fecha, entregar la llave voluntariamente a Esso.

El 14 de agosto de 1995 el Sr. González Alvarado instó una demanda contra Esso y los propietarios originales del arrendamiento, Sr. Juan Concepción y la Sra. Elba Díaz. Alegó que tanto Esso como los señores Concepción Díaz conocían, al momento de la compraventa de la *"llave"*, de los defectos en la estación señalados por la J.C.A. Estos defectos, añadió, no le permitían explotar adecuadamente la gasolinera, pues no podía hacer cambios de filtro y aceite, ni podía permitir el lavado de autos en el local, lo que también había afectado adversamente la venta de gasolina. El Sr. González Alvarado solicitó como remedios la devolución de la prestación de la *"llave"* ($180,000), el pago de la multa impuesta por la J.C.A., una indemnización por daños hasta que finalizara la vigencia del contrato, y la rescisión del mismo.

Entre la presentación de la demanda y la vista en su fondo del caso ocurrieron varios eventos que afectaron el desarrollo del mismo ante el Tribunal de Primera Instancia. Como señalamos anteriormente, el 8 de abril de 1996, Esso y un grupo de detallistas firmaron con la J.C.A. una estipulación que puso fin a la controversia entre las gasolineras y esa agencia gubernamental. Como mencionamos, el Sr. González Alvarado dejó de operar la estación el 23 de febrero de 1996 y el 11 de marzo de ese año, Esso dio por terminados los contratos de arrendamiento y de suministro de combustible. El Sr. González Alvarado logró vender el 25 de junio de 1996 la plusvalía o *"llave"* del negocio al Sr. Angel Pesquera Rivera y la Sra. Melissa Zambrana Cuevas, por la suma de $100,000.

El 3 de septiembre de 1996 se celebró una conferencia con antelación al juicio en la que el Sr. González Alvarado desistió de su demanda contra los Sres. Concepción Díaz. Debido a la venta del negocio, el demandante enmendó sus alegaciones para reducir la cantidad reclamada por concepto de plusvalía. Además, el Sr. González Alvarado enmendó la demanda para alegar que Esso se negó a venderle productos a partir del 21 de febrero de 1996.

Así, el Tribunal de Primera Instancia se limitó en su sentencia a la solución de tres controversias principales, a saber: (1) si Esso era responsable al Sr. González Alvarado por la alegada pérdida en plusvalía; (2) si la terminación del contrato por parte de Esso fue justificada; y (3) si Esso era responsable en alguna medida por los defectos en la estación que dieron origen a las órdenes administrativas de la J.C.A., y al subsiguiente cierre de las facilidades de lavado y *"pinos"* de la estación.

Una vez examinada la prueba presentada, tanto documental como testifical, el Tribunal de Primera Instancia emitió el 20 de febrero de 1997 la sentencia aquí recurrida. En la misma, el tribunal *a quo* determinó que Esso sólo respondía por los daños causados al Sr. González Alvarado por concepto de lubricantes dejados de vender debido a la dificultad para usar los *"pinos";* daños que estimó en $15,263. Señaló que *"Esso debe responder por*

*la pérdida en la ganancia de lubricantes, ya que el demandante pudo haber sido orientado más oportuna y eficientemente en el uso de los pinos para el cambio de aceite y filtros".*

Por otro lado, el Tribunal de Primera Instancia determinó que Esso no era responsable por la pérdida en plusvalía del negocio, la cual adjudicó principalmente a la pobre administración que el Sr. González Alvarado realizó mientras éste operaba la gasolinera y, particularmente, por mantener la misma cerrada por más de cuatro (4) meses. Igualmente, el foro llamó la atención al hecho de que Esso, más allá de cualificar al Sr. González Alvarado como comprador, no había intervenido de forma alguna en la negociación de la compraventa original, ni en la fijación del precio de $180,000 pagado por éste.

En cuanto a la terminación del contrato, el Tribunal de Primera Instancia concluyó que la misma fue realizada dentro del marco de los contratos de Arrendamiento y de Suministro, por lo que la misma fue razonable. Según la prueba desfilada, señaló el tribunal *a quo*, Esso decidió terminar con el contrato debido al cierre injustificado de la estación por el Sr. González Alvarado. Señaló, además, que los contratos de franquicia entre distribuidores de combustible y detallistas se rigen por la ley federal conocida como Petroleum Marketing Practices Act (o *"P.M.P.A."*, 15 U.S.C.A. secs. 2801 *et seq.),* la que, efectivamente, autoriza al distribuidor a terminar el contrato si el detallista cierra injustificadamente la estación por más de siete (7) días.

Finalmente, y en cuanto a la posible responsabilidad de Esso por los desperfectos en el sistema de inyección subterránea, el tribunal *a quo* determinó que Esso había tomado los pasos necesarios para resolver la querella ante la J.C.A., que incluyeron el pago de la multa impuesta al Sr. González Alvarado. Sobre el aspecto de la prohibición de utilizar el área de lavado de automóviles, el Tribunal de Primera Instancia tomó en consideración que el *"Retail Outlet Appraisal"* examinado por el Sr. González Alvarado antes de comprar la plusvalía de la estación, no se mencionaba ganancia mensual alguna por concepto de lavado de automóviles, por lo que el Sr. González Alvarado no tenía derecho de reclamar como pérdida lo que nunca le fue prometido o vendido.

El Sr. González Alvarado recurre ante nos de esta sentencia y alega que el Tribunal de Primera Instancia incidió al determinar: (1) que él abandonó la operación de la estación desde el 23 de febrero de 1996, cuando la causa próxima del cierre de la estación fueron las órdenes de la J.C.A. y el alegado acoso de que era objeto por parte de Esso; (2) que no hubo pérdidas por el cierre de la operación de lavado de automóviles y; (3) que Esso actuó diligentemente ante la J.C.A., aun cuando nunca dio aviso al Sr. González Alvarado de los problemas con el sistema de inyección subterránea que enfrentaba la estación.

Esso presentó ante nos su alegato en oposición, el cual suplementó luego de que recibiéramos una exposición narrativa de la prueba debidamente aprobada por el Tribunal de Primera Instancia.

## II

Según el Sr. González Alvarado, el Tribunal de Primera Instancia incidió al determinar que el cierre de la estación el 23 de febrero de 1996 se debió a las diferencias surgidas entre él y Esso por la forma en que se pagarían las cuentas pendientes y no por las órdenes emitidas por la J.C.A. y un alegado acoso de Esso contra el detallista. Sin embargo, las alegaciones hechas en este señalamiento de error son contrarias a la prueba desfilada ante el Tribunal de Primera Instancia, que éste creyó, y a la evidencia documental que consta en el expediente ante nuestra consideración.

De la exposición narrativa de la prueba surge que el propio Sr. González Alvarado fue quien durante la celebración del juicio en su fondo, declaró que él terminó las operaciones de la gasolinera cuando Esso comenzó a exigirle que pagara las cuentas pendientes mediante cheque certificado. [1] Cabe señalar que el cierre de la estación, en febrero de 1996, fue muy posterior a las órdenes administrativas de la J.C.A. (de 19 de abril y 9 de

octubre de 1995, por lo que las mismas no pudieron constituir la causa directa e inmediata de la decisión del Sr. González Alvarado de cerrar la gasolinera. Tampoco podemos pasar por alto el hecho de que las órdenes de la J.C.A. le impedían al Sr. González Alvarado disponer de fluidos en el sistema de inyección subterránea, mas no le impedían continuar vendiendo gasolina.

En cuanto al alegado acoso de Esso contra el Sr. González Alvarado, tampoco encontramos que el tribunal *a quo* hubiere cometido error al determinar que el mismo no ocurrió. Las comunicaciones de Esso solicitando que la estación se mantuviera limpia, pintada y recogida sólo exigían el cumplimiento estricto de las condiciones del contrato de arrendamiento que las partes habían firmado. No se solicitaba en ellas más de lo que el propio Sr. González Alvarado se había obligado a hacer. Siendo el contrato entre Esso y el Sr. González Alvarado uno perfectamente válido y no contrario a la ley, la moral o el orden público, las partes venían obligadas a cumplir con el mismo. Código Civil, Arts. 1044 y 1207, 31 L.P.R.A. secs. 2994, 3372. Evidentemente, el primer error señalado por el apelante no fue cometido.

Como segundo señalamiento de error, alega el Sr. González Alvarado que incidió el Tribunal de Primera Instancia al determinar que la estación de gasolina no sufrió pérdidas de ingresos por el cierre de operaciones de lavado de automóviles. Nuevamente, la evidencia documental refuta las alegaciones del apelante.

A los efectos de sustentar este señalamiento de error, el Sr. González Alvarado se limita a alegar que, entre 1994 y 1995, las ventas de gasolina, combustible diesel y lubricantes en la estación que él administraba sufrieron reducciones de cuantía. Este hecho (que, de ser cierto, es fácilmente imputable a múltiples factores) no apoya en lo absoluto la contención sobre la pérdida de ganancias por el cierre de operaciones de lavado de autos.

Cabe mencionar que al momento de comprar la plusvalía de la estación el Sr. González Alvarado, la misma no ofrecía ningún servicio de lavado de autos. Así, en el documento titulado *"Retail Outlet Appraisal"* que el Sr. González Alvarado examinó antes de hacer el contrato de arrendamiento con Esso, no se detalla ingreso mensual alguno por concepto de lavado de autos. Más aún, el renglón marcado *"Car Wash (any type)"* en dicho documento, aparece en blanco.

Finalmente, de las órdenes administrativas de la J.C.A. de abril y octubre de 1995 se desprende que lo que se le prohibió al Sr. González Alvarado fue el disponer de los fluidos en el sistema de inyección subterránea y no el detener operación de los pinos u otros servicios. De modo que, si el apelante hubiese hecho las correcciones necesarias, no hubiese sufrido las pérdidas que ahora reclama. El segundo error señalado tampoco fue cometido.

Como tercer y último señalamiento de error, alega el Sr. González Alvarado que incidió el tribunal *a quo* al determinar que Esso actuó diligentemente ante la J.C.A., aun cuando esa compañía nunca le dio aviso de los problemas con el sistema de inyección subterránea que enfrentaba la estación. Sobre este aspecto, ya hemos señalado que fue Esso quien pagó la multa impuesta por la J.C.A. a los detallistas. De hecho, de la estipulación firmada por Esso, los detallistas (incluyendo al abogado del Sr. González Alvarado), y la J.C.A. el 8 de abril de 1996, surge con claridad que fue Esso quien gestionó la transacción de la controversia y que, en el proceso, defendió los intereses de sus detallistas. Luego de examinar la prueba relacionada. con este aspecto del pleito, el Tribunal de Primera Instancia determinó que *"Esso no actuó con dolo, mala fe, ni intencionalmente realizó ningún acto que provocara la acción de la J.C.A. que afectó al demandante y a varios detallistas en su operación"*. El Sr. González Alvarado no nos ha persuadido en forma alguna para variar esta determinación. Y, al no mediar indicio de pasión, prejuicio, parcialidad o error manifiesto en el juicio del tribunal *a quo*, nos abstenenos de intervenir con sus determinaciones. *López v. I.T.T. Intermedia,* 142 D.P.R. ___ (1997), **97 J.T.S. 42;** *Quiñones López v. Manzano Pozas,* 141 D.P.R. ___ (1996), **96 J.T.S. 95.** Debemos concluir que el tercer error señalado no fue cometido.

## III

Por los fundamentos antes expuestos, se confirma la sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón, el 20 de febrero de 1997.

Así lo pronunció y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

**ESCOLIO 99 DTA 128**

**1.** Así lo señaló el Tribunal de Primera Instancia en su sentencia de 20 de febrero de 1997 (Determinación de Hechos Núm. 9), lo que también surge de la Exposición Narrativa, de 27 de febrero de 1999.